Michael A. Barnhill, Esq.
Alaska Department of Law
P.O. Box 110300
Juneau, AK 99811
(907) 465-4118  phone
(907) 465-2520  facsimile
Mike_Barnhill@law.state.ak.us

Counsel for Defendants

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

ALASKAN INDEPENDENCE PARTY,       )
LINDA WINKELMAN, ALASKA            )
LIBERTARIAN PARTY, INC., and       )
SCOTT KOHLHAAS,                     )
                                    )
                 Plaintiffs,        )     **MOTION TO DISMISS**
                                    )     **(Fed. R. Civ. P. 12(b)(6))**
        vs.                         )
                                    )
STATE OF ALASKA, DIVISION OF       )
ELECTIONS; and LOREN LEMAN         )
Lieutenant Governor,                )
                                    )
                 Defendants.        )
_____)     Case No. 3:06-CV-00040 TMB

The plaintiffs, Alaskan Independence Party, Linda Winkelman ("Independence Party"), Alaska Libertarian Party, Inc., and Scott Kohlhaas ("Libertarian Party"), have filed a complaint against the State of Alaska, Division of Elections and Lieutenant Governor Loren Leman seeking declaratory and injunctive relief. The Independence and Libertarian Parties contend that Alaska law deprives them of their right to select candidates in the manner in which they choose, including nomination by convention, and that therefore "persons whose political beliefs and

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600

philosophy is other than the political belief and philosophy" of the party are permitted to designate themselves as candidates of that party. Complaint ¶¶ 4-5.

The State of Alaska, Division of Elections and Lieutenant Governor Loren Leman (collectively the "State") move to dismiss this complaint for failure to state a claim under Fed R. Civ. P. 12(b)(6) for two reasons. First, the Independence and Libertarian Parties have not sufficiently alleged a case or controversy. The complaint does not allege any facts with respect to how their selection processes conflict with Alaska law. Moreover, the complaint does not identify specific candidates to whom the Independence and Libertarian Parties object.[1] Therefore, the Independence and Libertarian Parties have failed to allege a case or controversy.

Second, with respect to the merits of the complaint, the primary procedure is a legitimate and constitutional candidate selection procedure. The Independence and Libertarian Parties do not have a constitutional right to nominate their candidates in any manner they choose, including by convention. Moreover, the State has no legal obligation to ensure the ideological compatibility of candidates with their parties. Political parties have a right under state law to have a procedure in place to fairly select their candidates. In Alaska, and in most states in this country, that right is fairly implemented through the direct primary election system. *See* AS 15.25.010– AS 15.25.130.

---

[1]     Additionally, it may well turn out that the Independence and Libertarian Parties' candidates selected by the voters in the primary election to be held on August 22, 2006, will be perfectly acceptable to them. Thus, the Independence and Libertarian Parties' complaint may be premature as well.

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600

Accordingly, for the reasons set forth herein, the State respectfully requests that the complaint be dismissed with prejudice. This brief will first discuss this court's jurisdiction.

## I.     JURISDICTION

The State agrees that this court has jurisdiction over this matter, but only under the *Ex Parte Young* exception to the Eleventh Amendment of the U.S. Constitution. The other exceptions to the Eleventh Amendment do not apply.

In *Nelson v. Miller,* 170 F.3d 641 (6th Cir. 1999), the Sixth Circuit observed in a challenge to the election laws of the State of Michigan that there are three exceptions to the Eleventh Amendment prohibition against suing states in federal court:

> (1) where the state has consented to suit; (2) where the application of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and its progeny is appropriate; or (3) where Congress has abrogated the state's immunity.

*Id.* at 646. The court held that the State of Michigan had not consented to suit, thus the first exception did not apply.[2] However, the court held that the *Ex Parte Young* exception did apply because the suit sought only prospective relief. *Id.* at 646-47.[3] The court discussed but did not decide whether Congress had abrogated the state's immunity. *Id.* at 647-49.

In another case, the Sixth Circuit held that a suit brought against the State of Ohio that alleged a violation of the Voting Rights Act satisfied the third exception to

---

[2]     Consent to suit must be expressly set forth in statute. *Mixon v. State of Ohio,* 193 F.3d 389, 397 n. 7 (6th Cir. 1999).

[3]     *See also San Francisco County Democratic Cent. Comm. v. Eu,* 826 F.2d 814, 824-25 (1987), *aff'd,* 489 U.S. 214, 109 S.Ct. 1013 (1989) (Eleventh Amendment does not bar election law challenges seeking only prospective relief).

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600

the Eleventh Amendment bar. *Mixon v. State of Ohio,* 193 F.3d 389, 396-99 (6th Cir. 1999). There, the court held that in enacting the Voting Rights Act, Congress abrogated the states' sovereign immunity with respect to Voting Rights Act claims. *Id.*; *see also Reaves v. U.S. Department of Justice,* 355 F.Supp.2d 510, 515-16 (D.D.C. 2005) (Congress abrogated sovereign immunity for claims arising under the Voting Rights Act).

In this case, the State of Alaska has no statute waiving its sovereign immunity with respect to election law cases. Therefore, the State has not consented to suit and the first exception to the Eleventh Amendment bar does not apply.

With respect to the second exception, the State acknowledges that the Independence and Libertarian Parties have sued a state official and have sought only prospective relief. *See* Complaint at p. 6. Accordingly, the State agrees that the *Ex Parte Young* exception to the Eleventh Amendment applies.

Finally, the third exception to the Eleventh Amendment bar does not apply. As seen in *Mixon*, a violation of federal statute must be alleged as a necessary predicate to any determination of Congressional abrogation. *Mixon,* 193 F.3d at 397-99. In this case, the Independence and Libertarian Parties have not alleged a violation of any federal statute in their complaint. Therefore, there is no Congressional abrogation of the State's immunity and the third exception to the Eleventh Amendment bar cannot support jurisdiction over this matter.

In summary, the only basis for this court's jurisdiction is the *Ex Parte Young* exception to the Eleventh Amendment bar against suing states in federal court. The State notes that the U.S. Supreme Court has recently characterized the *Ex Parte Young* exception as an "expedient 'fiction.'" *Central Virginia Community College v.*

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600

*Katz*, 74 U.S.L.W. 4101, 126 S.Ct. 990, 1005 n. 14 (2006). In the event that the U.S. Supreme Court at some point during the pendency of this case decides to discard this fiction, the State reserves its right to challenge the court's jurisdiction over this case under the Eleventh Amendment.

## II.    MOTION TO DISMISS STANDARD

The purpose of a motion under Fed. R. Civ. P. 12(b)(6) is to test the legal sufficiency of the complaint. The factual allegations in a complaint are taken as true and are construed in favor of the nonmoving party. *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997). In this case, taking the facts pled by the Independence and Libertarian Parties to be true, the complaint fails to state a claim as a matter of law.

## III.    LACK OF CASE OR CONTROVERSY

Federal courts will only consider a case if there is a real case or controversy. In a previous case brought by the Independence and Libertarian Parties, the Ninth Circuit held: "Where the plaintiffs seek declaratory and injunctive relief, the relevant inquiry is whether there is a "substantial controversy . . . of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Ross v. State of Alaska,* 189 F.3d 1107, 1114 (9th Cir. 1999), *cert. denied,* 528 U.S. 1155 (2000) (emphasis in original). In *Ross*, the Ninth Circuit affirmed dismissal of the Independence and Libertarian Parties' challenge to Alaska's blanket primary. Similar to this case, the Independence Party contended that its bylaws conflicted with Alaska's primary laws as they then existed. *Id.* The court observed, however, that the Independence Party's bylaws only permitted the Independence Party to designate a candidate when permitted to do so by Alaska law. *Id.* The Libertarian Party separately

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600

contended that it should "have the right of self control over the nomination of its candidates." *Id.* at 1115. With respect to this contention, the court ruled that the Libertarian Party had failed to describe how it would nominate candidates and whether that procedure was in conflict with Alaska's primary system. *Id.* Thus, the court concluded that the Independence and Libertarian Parties had failed to allege a case or controversy.

This case is similar. The Independence Party's bylaws provide "[i]n any election where the Alaskan Independence Party is authorized by law to nominate a candidate, the State Committee shall be empowered to present a nominee in the name of the Alaskan Independence Party, or to reject any candidate not in compliance with these bylaws." Sec. 5.15, Ex. A (Independence Party's Bylaws). Thus, the Independence Party's bylaws recognize that its direct nomination power is contingent upon Alaska law recognizing such power. The Libertarian Party's bylaws are similar but the language used is more colorful.[4] At this time, Alaska does not permit parties to directly nominate candidates by means of a convention or otherwise. Thus, there is no conflict between the Independence and Libertarian Parties' bylaws and Alaska law.

Likewise, with respect to the Independence and Libertarian Parties' contentions that they should have the power to directly nominate candidates, they fail to

---

[4] "The Alaska Libertarian Party maintains that primary elections are a waste of taxpayers' money, and serve only as free advertising for candidates in a process wherein, for all practical purposes, the winners have already been decided, or, as is often the case, only one candidate per political party is in a primary election for a given post. We have also seen examples of candidates undesirable to a given party winning the primary election. But, until that happy day when government-sponsored primaries are abolished, and we may nominate all our candidates at our own convention, we recognize the hard realities and expediencies of politics, and consent to have Libertarian candidates for elective public office appear on a primary ballot . . . ." Art. XI, Ex. B (Libertarian Party's Bylaws).

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600

allege with specificity how they would do it or whether they have adopted a procedure that directly conflicts with Alaska's primary system. Moreover, even to the extent that the Independence and Libertarian Parties have adopted a potentially conflicting procedure, the State suggests that a case or controversy does not exist until that point in time when the parties' procedures have produced candidates that are different than the candidates selected in the primary. And at a minimum, the State believes that the Independence and Libertarian Parties would have to identify a current candidate that is objectionable to them in order to establish a case or controversy. Otherwise, this case is entirely hypothetical.

The Independence and Libertarian Parties have not identified in their complaint a conflicting procedure that they have adopted, nor have they identified candidates that they object to. There is no substantial controversy of sufficient immediacy and reality. Accordingly, their case should be dismissed.

## IV.    A POLITICAL PARTY DOES NOT HAVE THE RIGHT TO DIRECTLY SELECT A CANDIDATE OUTSIDE OF THE PRIMARY SYSTEM

The Independence and Libertarian Parties allege that they have the constitutional right to self-designate their candidates. While the State is subject to certain constitutional restrictions in its supervision of elections, as long as it complies with those, parties have no right under the U.S. or Alaska Constitutions to determine the procedure by which they select their candidates. To understand why this is so, a brief discussion of the history of the direct primary in this country is necessary.

/ / /

/ / /

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600

## A.    The Direct Primary in the United States

During the 19th century, political parties usually nominated their candidates by convention or caucus. By the end of the century there was widespread belief that these processes were corrupt:

> There were a variety of caucus and convention systems (sometimes called primaries) used in the states, with varying levels of participation by party activists. In order to maintain their control over this system, political bosses, when necessary, engaged in a variety of dubious practices, ranging from outright fraud and vote buying to more sophisticated manipulation of the machinery.

Malcom E. Jewell, Parties and Primaries: Nominating State Governors 6 (1984). The progressive movement of the late 19th and early 20th centuries sought to end the abuse of the "smoke-filled backrooms" by instituting the direct primary throughout the northern states. Robert LaFollette, a progressive movement leader in Wisconsin, made the following argument in support of the direct primary:

> Under our form of government the entire structure rests upon the nomination of candidates for office. This is the foundation of the representative system. If bad men control the nominations we cannot have good government. Let us start right. The life principle of representative government is that those chosen to govern shall faithfully represent the governed . . . .
> With the nominations of all candidates absolutely in control of the people, under a system that gives every member of a party equal voice in making that nomination, the public official who desires re-nomination will not dare seek it, if he has served the machine and the lobby and betrayed the public trust.

*Id.* at 7. By 1917, most of the northern states had adopted mandatory direct primaries. *Id.* at 8. The territory of Alaska adopted the mandatory direct primary in 1919, and it has continued in various forms until today. *See* Secs. 1501-1511, Compiled Laws of Alaska, 1933; sec. 38-4-1–38-4-12, Alaska Compiled Laws Annotated, 1949; sec. 5.01,

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600

*et seq.*, ch. 83, SLA 1960 (enacting AS 15.25.010–AS 15.25.130).  Today almost all states have mandatory direct primaries, though some states permit parties to have conventions if they so desire.  *See, e.g.,* N.M. Laws 1-8-21.1 (optional convention procedure).

While the right of the people to directly nominate candidates through primaries has been practically unquestioned for the last 100 years, that has not stopped political parties from attempting to exert some influence over the primary system in order to ensure ideological compatibility of the candidates.  Indeed, Alaska law from its earliest days required candidates to swear an oath of loyalty to support the principles of the party they sought to represent.  *See* Sec. 1501, Compiled Laws of Alaska 1933; sec. 38-4-1, Alaska Compiled Laws Annotated, 1949; AS 15.25.030(12) (as enacted by sec. 5.03, ch. 83, SLA 1960).  In 1977, however, the Alaska legislature repealed the loyalty oath requirement.  *See* Sec. 3, ch. 133, SLA 1977 (repealing AS 15.25.030(12) which required candidates to swear that "the candidate if nominated and elected will support the principles of the party he seeks to represent.").[5]

Not surprisingly, the swift change to the direct primary system in the early years of the 20th century was challenged in court.  The first mandatory direct primary was enacted in Wisconsin in 1903.  The primary was challenged on a variety of grounds, including the right to assemble and petition the government under the

---

[5]  The loyalty oath was deleted from legislation amending the Alaska Election Code on the floor of the House.  In words harkening back to the progressive movement at the beginning of the 19th century, Representative Randy Phillips moved to delete this requirement contending that "There will come a time when a candidate will have to represent the constituents rather than the party."  *See* 10th Alaska Legislature, 1st Session, Day 138, Tape No. 3 of 4, May 27, 1977 (SB 164, Amend. No. 6); 3 *Alaska House Journal 1977* at 1586 (SB 164, Amend. No. 6).  After a short debate, the motion carried 34-6.  *Id.*

ATTORNEY GENERAL, STATE OF ALASKA
DIMOND COURTHOUSE
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: 465-3600