Wisconsin Constitution. The Wisconsin Supreme Court disagreed that the new primary system interfered with that right:

> What the [Wisconsin] Constitution guarantees is the right of assemblage and of consultation. [The primary law] does not interfere with that right. The people or their delegates may now assemble, hold conventions and consult as they did formerly. The law does provide that certain things which were done at conventions by delegates representing the people must now be done by the people themselves at an election, and that other things which were done by conventions must now be done by the candidates nominated for office. It would be rather far-fetched to say that, because some acts were performed by assemblages before the [Wisconsin] Constitution was adopted, a perpetual right is guaranteed thereby that these particular acts must for all future time be performed in the same manner. In lieu of congregating at caucuses and selecting delegates to assemble and represent them, the voters may now assemble at the polls in the different polling places, and consult and express their choice of candidates. There is no curtailment of the right guaranteed by the [Wisconsin] Constitution. At best there is but a substitution of methods by which the selection of candidates is to be made. The right of any political party to assemble in convention and consult for the common good is unimpaired.

*State ex rel Van Alstine v. Frear,* 125 N.W. 961, 967 (Wis. 1910). With respect to concerns that the primary system would erode the ideological compatibility of candidates with their parties, the Wisconsin Supreme Court concluded that "the objection is political rather than judicial, and should be remedied by the Legislature instead of by the courts." *Id.* at 969.

More recently, the U.S. Supreme Court has addressed a number of primary-related issues. In *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296 (1974), small political parties challenged the Texas system of requiring primary elections only for major political parties and conventions only for small political parties.

The Court rejected the notion that the Texas system violated either the First or Fourteenth Amendments. The Court held:

> It is too plain for argument, and it is not contested here, that the State may limit each political party to one candidate for each office on the ballot and may insist that intraparty competition be settled before the general election by primary election or by party convention. . . . Neither can we take seriously the suggestion made here that the State has invidiously discriminated against the smaller parties by insisting that their nominations be by convention, rather than by primary election. . . . The procedures are different, but the Equal Protection Clause does not necessarily forbid the one in preference to the other.

*Id.* at 781-82, 94 S.Ct. at 1306 (quoted with approval by *California Democratic Party v. Jones,* 530 U.S. 567, 572, 120 S.Ct. 2402, 2407 (2000)). The Court observed that the State's interest in "preservation of the integrity of the electoral process was 'compelling.'" *American Party of Texas,* 415 U.S. at 782 n. 14, 94 S.Ct. at 1307 n. 14.[6] Thus, a state's right to impose a primary election for the selection of party candidates is firmly established in law.

The U.S. Supreme Court has continued to recognize the right of states to regulate elections. But the Court has held that there are limits to this power. States may not: control how party delegates vote (*Democratic Party of U.S. v. Wisconsin,* 450 U.S. 107, 101 S.Ct. 1010 (1982)); require primary ballots that are closed to independent voters (*Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 107 S.Ct. 544 (1986)); forbid political parties from endorsing candidates (*Eu v. San Francisco County*

---

[6] In the companion case to *American Party of Texas,* the Court ruled that "There must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279 (1974).

MOTION TO DISMISS                                                                                     PAGE 11 OF 17
*AK Independ. Party, et al. v. State of AK, Div. of Elections, & Lt. Gov. Leman*   Case No. 3:06-CV-00040 TMB

*Democratic Cent. Comm.*, 489 U.S. 214, 109 S.Ct. 1013, (1989)); regulate the internal affairs of a political party unless necessary for a fair and orderly election (*Id.*); or require blanket primary ballots if a party objects (*California Democratic Party v. Jones*, 530 U.S. 567, 120 S.Ct. 2402 (2000)).[7] The unifying theme of these cases appears to be that while states have the power to regulate election processes, they have little power to limit political parties' constitutional rights to associate.

In sum, while the U.S. Supreme Court has imposed limits on the states' ability to regulate elections, the Court has never questioned the legitimacy of the direct primary. Indeed, it has endorsed it: "A primary is not hostile to intraparty feuds; rather it is an *ideal forum* in which to resolve them." *Eu*, 489 U.S. at 227, 109 S.Ct. at 1022 (emphasis added). With this background on direct primaries, we now turn to the Independence and Libertarian Parties' claims.

**B.  The Independence and Libertarian Parties Do Not Have the Right to Directly Select a Candidate**

The Independence and Libertarian Parties contend that "[a]ll political parties may select their candidates in accord with the pre-cleared bylaws or rules of each party. This right to do so is a right guaranteed to each party and its members by the First Amendment to the United States Constitution, applicable to the defendants through the Fourteenth Amendment." Complaint, ¶ 8. The Independence and Libertarian Parties further contend that the Alaska law requiring the direct primary procedure for recognized parties violates the parties' First and Fourteenth Amendment

---

[7]  Though the Alaska Supreme Court has held that under both the Alaska and federal Constitutions a political party has the associational right to insist on a limited blanket primary, i.e., a combined ballot for the parties that desire to have such a ballot. *State v. Green Party of Alaska*, 118 P.3d 1054 (Alaska 2005).

MOTION TO DISMISS                                                               PAGE 12 OF 17
*AK Independ. Party, et al. v. State of AK, Div. of Elections, & Lt. Gov. Leman*   Case No. 3:06-CV-00040 TMB

rights to self-designate candidates. Complaint, ¶¶ 9-14. As discussed herein, the Independence and Libertarian Parties are incorrect.

In *Tashjian,* the U.S. Supreme Court specified a particular framework for evaluating elections challenges under the First and Fourteenth Amendments:

> [A] court . . . must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Tashjian* at 214, 107 S.Ct. at 548 (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570 (1983)); *see also State v. Green Party of Alaska,* 118 P.3d 1054, 1059-61 (Alaska 2005) (applying similar test to election law challenges brought under the Alaska Constitution). The Court requires that the state's interest be compelling and that the challenged law be narrowly tailored to serve that interest. *Eu,* 489 U.S. at 222, 109 S.Ct. at 1019.

Accordingly, we first evaluate the nature of the Independence and Libertarian Parties' claimed injury. The Independence and Libertarian Parties contend that Alaska's primary law deprives them of the right to designate candidates. But it does not. The primary is merely a procedure by which the party selects a candidate. The beauty of the direct primary is that it is fair and democratic—each member of the

political party gets an equal say in who gets to represent the party in an election.[8] The primary eliminates the potential for abuse by party leadership who desire to control the nomination of candidates, irrespective of the desires of the rank and file membership of the party.[9] The associational rights of the parties are in no way impaired by the primary system.

To the extent that certain candidates are ideologically incompatible with a particular political party, the members of that party have the First Amendment right to campaign for or endorse another candidate who is ideologically compatible. The party has the First Amendment right to communicate the reasons why it thinks a particular candidate is objectionable and to endorse another candidate.[10] The members of the party can then evaluate all the information provided by and about a particular candidate, and cast a vote in a fair and regulated primary.

The case law uniformly confirms the lack of injury. In 1910, the Wisconsin Supreme Court held that the direct primary did not impair a party's freedom to associate. *State ex rel Van Alstine v. Frear*, 125 N.W. 961, 967 (Wis. 1910). In 1974, the U.S. Supreme Court held that it was past argument that the State has the right

---

[8]  We note that both the Independence Party's and Libertarian Party's bylaws permit an open ballot, meaning non-members may vote their ballots. Art. IX, Ex. A (Independence Party's Bylaws); Art. XI, Ex. B (Libertarian Party's Bylaws).

[9]  The State does not suggest that the leadership of either the Independence Party or the Libertarian Party have abused their power or that they necessarily would abuse their power if the parties were granted the right to select their own candidates. However, the State submits that the genius of this country's political system is its recognition of the corrupting nature of power and the need for checks and balances. This genius was the product of historical experience. Accordingly, the State maintains that the primary system is a necessary check on the exercise of power by party leadership.

[10]  *Eu*, 489 U.S. at 222-29, 109 S.Ct. at 1020-23 (1989).

MOTION TO DISMISS                                                                    PAGE 14 OF 17
*AK Independ. Party, et al. v. State of AK, Div. of Elections, & Lt. Gov. Leman*  Case No. 3:06-CV-00040 TMB

to require a primary election. *American Party of Texas v. White*, 415 U.S. 767, 781, 94 S.Ct. 1296, 1306 (1974).[11] More recently, the U.S. Supreme Court held that the primary is the "ideal forum" to resolve intraparty differences. *Eu*, 489 U.S. at 227, 109 S.Ct. at 1022. In summary, there is no question that the rights of Independence Party and Libertarian Party have not been injured.

Turning to the second part of the *Tashjian* test, we evaluate the nature of the State's interests in imposing a primary system. As noted above, Alaska has had a direct primary system in place since 1919. The State has a compelling interest in perpetuating the primary system because it is fair, honest, and necessary to preserve the integrity of the electoral process. *American Party of Texas*, 415 U.S. at 782 n. 14, 94 S.Ct. at 1307 n. 14. It ensures that all votes are counted and all participants in a primary election have equal say in the selection of candidates. It prevents the abuse of the "smoke-filled back rooms" of the 19th century. It is an eminently desirable system, as evidenced by the complaints of the small parties in Texas who were relegated to the convention system under Texas law. *See id.*, 415 U.S. at 781, 94 S.Ct. at 1306.

Moreover, the primary system is narrowly tailored to serve the state's compelling interest. The State does not use the primary system to govern the internal affairs of any political party. The primary system does not interfere in any way with the parties' ability to associate or their ability to speak freely. It is merely a mechanism to ensure that the candidates of all parties are fairly selected.

---

[11] The irony of course is that in *American Party of Texas*, the small parties were subjected to a convention system, and wanted instead to be subjected to the primary system. The Court's ruling was that the State was free to impose either. *Id.*

In summary, the Independence and Libertarian Parties have suffered no injury to their rights because they are subject to the primary system. The State of Alaska has a compelling interest in having the primary system in place and the law is narrowly tailored to serve that interest. Accordingly, the Independence and Libertarian Parties have failed to state a claim and their complaint must be dismissed.[12]

## V.    CONCLUSION

The Independence and Libertarian Parties seek to turn back the clock on the right of the people to directly nominate candidates in a direct primary to the 19th century when party bosses dominated the selection process. The Independence and Libertarian Parties have no constitutional right to do so.

That being said, the State recognizes that other states, such as New Mexico, have optional convention procedures. But those are provided not because political parties have a right to them, but rather because the legislatures in those states have chosen to provide that electoral option. Thus, the appropriate venue for the Independence and Libertarian Parties' concerns is not this court, but the Alaska legislature. There, the Independence and Libertarian Parties are free to make their case as to why Alaska law should provide them a legal procedure to nominate candidates outside the primary system.

---

[12]  In their complaint, the Independence and Libertarian Parties reference the pre-clearance of their bylaws by the Department of Justice. Complaint, ¶¶ 7-9. The Department of Justice is authorized to pre-clear changes to political parties' bylaws under Section 5 of the Voting Rights Act in certain circumstances. 42 U.S.C. Sec. 1973c; 28 C.F.R. sec. 51.7. The purpose of pre-clearance is to determine whether there are any changes that have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. 28 C.F.R. sec. 51.52(a). Since the Independence and Libertarian Parties have not alleged any issue related to race, color, or membership in a language minority group, the fact that their bylaws may have been precleared by the Department of Justice is irrelevant.

In sum, the plaintiffs have failed to allege a case or controversy. The Alaska primary system is eminently constitutional. Political parties do not have the constitutional right to self-designate their candidates. By and large, the states in this country long ago discarded conventions as a method to nominate candidates because they were so prone to abuse. Accordingly, the State respectfully requests that this court dismiss the Independence and Libertarian Parties' complaint with prejudice.

DATED this 21th day of June, 2006.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By: *[signature]*
Michael Barnhill
Assistant Attorney General
Alaska Bar No. 9311063

**CERTIFICATE OF SERVICE**
I hereby certify that I served the foregoing document and Exhibits A and B on June 21, 2006 via USPS prepaid first-class mail, addressed to the following party:

Ken Jacobus, Esq.
310 K Street, Suite 200
Anchorage, AK 99501-2064

*[signature]* Janet Mehl
Janet Mehl, Law Office Assistant