a democratic fashion." *California Democratic Party v. Jones,* 530 U.S. 567, 572, 120 S.Ct. 2402, 2407 (2000).

Moreover, while the U.S. Supreme Court has repeatedly held that the states may not unduly interfere with political parties' associational rights (*see* Defendants' Motion to Dismiss at 11-12), last year the Court reiterated its view that states could impose some reasonable burdens on parties' associational rights, such as a requirement that a primary be closed to only party members and non-affiliated voters. *Clingman v. Beaver,* 544 U.S. 581, 125 S.Ct. 2029 (2005). Writing for the majority, Justice Thomas held that, "[w]hen a state electoral provision places no heavy burden on associational rights, 'a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.'" 544 U.S. at 593, 125 S.Ct. at 2039 (citations omitted).

In her concurring opinion, Justice O'Connor[2] observed that "[n]early every State in the Nation now mandates that political parties select their candidates for national or statewide office by means of primary elections." 544 U.S. at 599, 125 U.S. at 2042. Justice O'Connor also stated that:

> "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live," . . . and "[t]he right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." . . . The Court has repeatedly reaffirmed that the First and Fourteenth Amendments protect the rights of voters and parties to associate through primary elections.

---

[2] The Alaska Supreme Court expressed some discomfort with the majority opinion in *Clingman* and declined to accept it as controlling precedent for interpreting the Alaska Constitution. *See State v. Green Party of Alaska,* 118 P.3d 1054, 1064 n. 72 (Alaska 2005). The court, however, did signal agreement with Justice O'Connor's concurrence. *Id.*

544 U.S. at 599-600, 125 U.S. at 2042-43 (citations omitted). Finally, Justice O'Connor wrote that "[w]here the State imposes only reasonable and genuinely neutral restrictions on associational rights, there is no threat to the integrity of the electoral process and no apparent reason for judicial intervention." 544 U.S. at 603, 125 U.S. at 2044-45.

Alaska, like most other states, imposes a mandatory direct primary. Alaska, like most other states, allows voters and candidates to affiliate with the party of their choice. The purpose of the primary is to allow party members, and others if the primary is open, to select the candidate to represent the party in the general election. The vote of every voter in the primary is counted equally. The process is fair, reasonable and genuinely neutral. And the process works.

Alaska's primary election law, however, does not confer upon party central committees or party leadership the power to exclude candidates who are formally affiliated with that party from running in that party's primary. To do so would insert an element of unfairness in the process. It would turn back the clock on the electoral process to the 19th century when party bosses made decisions as to who represented a party, as opposed to all members of the party having an equal say in the decision. Permitting party leadership to make the decisions that are now collectively made by the party members in a primary will fundamentally disenfranchise the rank and file members of a party. To the extent that this is a burden on parties' associational rights, it is a burden that is reasonable and nondiscriminatory and therefore tolerated as constitutionally permissible and not worthy of judicial intervention under *Clingman*. 544 U.S. at 603, 125 U.S. at 2044-45.

Plaintiffs rely exclusively on a recent case from the Ninth Circuit as support for their motion for summary judgment. Plaintiffs' Motion for Summary Judgment at 3-4 (discussing *Washington State Republican Party v. State of Washington,* Nos. 05-35774, 05-35780, 2006 WL 2404751 (9th Cir. Aug. 22, 2006)). This case is undoubtedly an important precedent and is arguably binding on this court. Plaintiffs, however, have not attempted to understand or explain the differences in Washington's primary law and how they impacted the court's ruling in that case.

Washington's blanket primary was declared unconstitutional in the wake of *California Democratic Party v. Jones,* 530 U.S. 567, 120 S.Ct. 2402 (2000). As a replacement, Washington voters enacted by initiative (Initiative 872) a new primary law. Initiative 872 had two salient features: (1) candidates were not required to formally affiliate with a political party, but could merely state a party preference which would be set forth on the primary ballot; and (2) the top two candidates in a race would advance to the general election. *Washington State Republican Party,* 2006 WL 2404751 at 3.

The Ninth Circuit began its analysis of Initiative 872 with a determination of whether the law imposed a severe burden on the associational rights of political parties. The court found that because Initiative 872 allowed candidates to state a party preference, the primary was partisan in nature. *Id.* at 6. Therefore, the purpose of the primary was to nominate a candidate to represent a political party in the general election. But Initiative 872 allowed all voters to participate in the primary, regardless of affiliation or of a political parties' desire to keep the primary closed. *See Washington State Republican Party v. Logan,* 377 F.Supp.2d 907, 912 (W.D. Wash. 2005), aff'd,

*Washington State Republican Party v. State of Washington,* Nos. 05-35774, 05-35780, 2006 WL 2404751 (9th Cir. Aug. 22, 2006)). Thus, Initiative 872 continued the features of a blanket primary that the U.S. Supreme Court found objectionable in *California Democratic Party v. Jones,* 530 U.S. 567, 120 S.Ct. 2402 (2000). The Ninth Circuit was particularly concerned about the lack of any requirement for formal affiliation by a candidate with a party:

> Given that the statement of party preference is the *sole* indication of political affiliation shown on the ballot, that statement creates the impression of associational ties between the candidate and the preferred party, irrespective of any actual connection or the party's desire to distance itself from a particular candidate.

*Id.* at 7 (emphasis in original). Thus, the court found that Initiative 872 imposed a severe burden on political parties' associational rights. *Id.* at 6-10.

Because there was a severe burden, the court inquired as to whether there was a compelling state interest and narrow tailoring. The court concluded there was neither and found Initiative 872 unconstitutional. *Id.* at 10.

Initiative 872 bears no resemblance to Alaska primary law. First, Alaska primary law requires candidates to formally affiliate with a party before the candidate may run in that party's primary. *See* AS 15.25.030(a). Initiative 872 did not require this—instead candidates could informally just state a political party "preference." The Ninth Circuit found this "preference" feature to be "the essence of Initiative 872's constitutional flaw." *Washington State Republican Party,* 2006 WL 2404751 at 8.

Second, Alaska law no longer permits the imposition of a blanket primary against the wishes of a political party. AS 15.25.014. Parties may choose to hold either open or closed primaries. *Id.* Initiative 872, however, continued to resemble a

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                                    PAGE 11 OF 14
*AK Independ. Party, et al. v. State of AK, Div. of Elections, & Lt. Gov. Leman*  Case No. 3:06-CV-00040 TMB

blanket primary because a voter, regardless of party affiliation, could participate in the primary and vote for any candidate, regardless of the candidate's stated political preference, and regardless of the political parties' wishes concerning whether the primary should be open or closed.

The distinctions between Alaska law and Initiative 872 are constitutionally significant. The requirement in AS 15.25.030 that candidates formally affiliate with parties before they can run protects both the associational rights of the candidate as well as the party. Candidates have the right, within certain bounds,[3] to affiliate with the party of their choice. As Justice O'Connor observed, "the right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Clingman,* 544 U.S. at 600, 125 U.S. at 2042-43. The associational rights of the party are protected by the primary itself. When certain party members, including party leaders, object to another party member running for office, there can be no better way to resolve that intra-party dispute than through a neutral primary process. *Jones,* 530 U.S. at 572, 120 S.Ct. at 2407. In a primary, the members as a whole vote and decide who shall serve as the party's standard bearer.

Moreover, Alaska does not impose a blanket primary on parties, as did Initiative 872. In Alaska, political parties are free to close their primaries. The Alaskan Independence Party and the Alaska Libertarian Party are free to close their primaries. The political parties in Washington were not. It is certainly significant here that neither

---

[3]   States may impose reasonable restrictions to prevent party raiding, "a process in which dedicated members of one party formally switch to another party to alter the outcome of that party's primary." *California Democratic Party v. Jones,* 530 U.S. 567, 572, 120 S.Ct. 2402, 2407 (2000).

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                                   PAGE 12 OF 14
*AK Independ. Party, et al. v. State of AK, Div. of Elections, & Lt. Gov. Leman*   Case No. 3:06-CV-00040 TMB

the Alaskan Independence Party nor the Alaska Libertarian Party elected to close their primary.

Finally, the Alaskan Independence Party and the Alaska Libertarian Party have the right to conduct party conventions and endorse candidates for office. *State ex rel. Van Alstine v. Frear,* 125 N.W. 961, 967 (Wis. 1910). The endorsed candidates may then compete in the primary against the candidates who are not endorsed. In the end the voters—not the party bosses—will choose.

In sum, Alaska's primary laws are entirely reasonable, fair and neutral. To the extent they impose any burdens on the plaintiffs' associational rights, they are not severe, and thus constitutionally permissible. *Clingman,* 544 U.S. at 603, 125 U.S. at 2044-45 (O'Connor, J., concurring).[4]

## V. CONCLUSION

Alaska's primary law guarantees that the vote of every member of the Alaskan Independence Party and every member of the Alaska Libertarian Party, as well as the vote of every voter those parties invite to participate in their primaries, will be counted and will be given equal weight in determining who represents those parties in the general election. This is the essence of a constitutional modern American electoral process.

---

[4] In its motion to dismiss, the State applied the compelling interest standard. *See* Motion to Dismiss at 13-16. Under *Clingman,* however, application of this standard is arguably not required because there is no severe burden to the associational rights of the political parties in this case. The State submits that the primary laws at issue in this case satisfy any standard of scrutiny. Nevertheless, the State wishes to preserve the argument that in the absence of severe burden, the lower standard of scrutiny is applicable.

Accordingly, the State respectfully requests that the plaintiffs' motion for summary judgment be dismissed and that the State's motion to dismiss be granted and the plaintiffs' complaint dismissed.

DATED this 4th day of October, 2006.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By: *[signature]*
Michael Barnhill
Assistant Attorney General
Alaska Bar No. 9311063

**CERTIFICATE OF SERVICE**
I hereby certify that I served the foregoing document on October 4, 2006 via electronic mail and will serve on October 5, 2006 via USPS mail, addressed to the following party:

Ken Jacobus, Esq.
310 K Street, Suite 200
Anchorage, AK 99501-2064

*[signature]*
_____
Michael A. Barnhill